UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATASHIA L. BING,

Plaintiff,

v.

HAMPTON INN & SUITES
BLOOMFIELD HILLS DETROIT,

Defendant.
____________________________________/

Civil Action No. 24-12764

F. Kay Behm
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 26)**

*Pro se* plaintiff LaTashia L. Bing ("Bing") brings the instant action against defendant Hampton Inn & Suites Bloomfield Hills Detroit ("Hampton Inn"), alleging "racial discrimination, Retaliation, disability discrimination, disparate treatment, workplace harassment, [and] hostile work environment" arising from her work at Hampton Inn between March and May 2022. (ECF No. 1, PageID.6).[1]

On November 17, 2025, Hampton Inn filed a motion for summary judgment. (ECF No. 26). Bing responded on January 15, 2026. (ECF No. 29). However, because that filing contained several blank pages, the Court held a status conference on May 6, 2026, and thereafter ordered Bing to file a revised response. (ECF No. 33). On June 8, 2026, Bing filed a revised response (ECF No. 35) and Hampton Inn replied (ECF No. 36).

[1] Pursuant to 28 U.S.C. § 636(b), all pretrial matters have been referred to the undersigned. (ECF No. 18).

The Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Hampton Inn's motion for summary judgment **(ECF No. 26)** be **GRANTED.**

## II. REPORT

### A. Background

Bing's complaint is vague and difficult to follow. The events in question occurred between April and May 2022, during which time Firas Bakoss ("Firas") was Bing's supervisor. (ECF No. 1; ECF No. 26, PageID.198). Bing chronicles a series of incidents in which Firas allegedly discriminated against her because of her race, which led to her sending "a letter to management regarding harassment from Firas via email" on May 12, 2022. (ECF No. 1, PageID.12).

First, Bing alleges that Firas discriminated against her when he asked her if she "was interested in giving Jason [another employee] 2 of my 5 scheduled days because they knew I worked as a teacher and night auditor at another property part time." (*Id.*, PageID.6). Bing alleges that Jason is Chaldean. (*Id.*, PageID.22). Hampton Inn does not dispute that Firas asked Bing if she wanted to give some of her working days to another employee, though it disputes that the request was in any way discriminatory. Next, Bing alleges that on April 11 and April 26, 2022, Firas requested that she fold towels while working the front desk and Bing told him that she is "not in the housekeeping department and… not

physically able to do laundry." (*Id.*; ECF No. 26-8, PageID.400-01).[2] In response, on April 27, 2022, Firas "asked for doctors note ASAP regarding [her] request to not fold laundry." (*Id.*). Specifically, Firas texted Bing that "we [are] all going to fold towels and sheet[s] at the front desk and you are refusing to do that. Otherwise if you any [sic] doctors notice with restriction saying that u not allowed to do that then you will be fine." (ECF No. 26-11, PageID.418). Finally, on May 11, 2022, Firas asked Bing "why [she] didn't stock keys, chips and water," and she told him "that a order [sic] had not come yet and these items were not stocked when I arrived." (ECF No. 1, PageID.12).

The next day, in the morning of May 12, 2022, Firas sent Bing a message saying "[w]e need to talk." (ECF No. 26-9, PageID.404). Along with that message, he sent photos of crates and water with the message, "[w]e have plenty of water and chips. U didn't even bother to get them ready." (*Id.*, PageID.406). He also sent her a photo of her walking in the office barefoot with the message "walking to the front desk barefoot is not professional," and a message saying, "Why u kept the cabinet door open all night. That door need to stay closed." (*Id.*, PageID.407).

At around 2:30 pm, Bing and Firas agreed over text to meet the following day. (ECF No. 26-10, PageID.415). Around 3:30 pm, Bing asked for "the Hilton emails for Faris and Samon." (ECF No. 26-10, PageID.413). After receiving the emails, Bing "[s]ent a letter to management regarding harassment from Firas via email" later that day. (ECF No. 1,

[2] Elsewhere in the complaint Bing alleges, "I have a very serious skin condition and must avoid different chemicals and detergents, my reasonable request to avoid touching sheets and towels used by different guest and washed with unknown detergents was denied." (ECF No. 1, PageID.13).

PageID.12, 22).[3]

Bing alleges that the following day, on May 13, 2022, during her meeting with Firas, she "was written up by Management for 13-15 violations and taken off the schedule for 4 days." (ECF No. 1, PageID.12). She alleges she "was told that [her] chair would be removed from the desk and [she] would be required to stand during [her] shift." (*Id.*, PageID.13).

In the "Employee Reprimand Sheet," the "Violation" is explained as follows:

> Latashia Bing was caught sleeping in the back office numerous of time [sic] (04/12, 04/18, 04/21, 04/25, 05/02, 05/11, 05/12). Other violations include not attending the first front desk mandatory meeting, walking barefoot to the front desk to assist guests on both April 19th and May 12th•
>
> Also, was warned at least once about not blocking the camera by swinging the cabinet door and leaving it opened. Latashia continued to ignore following my directions and left the cabinet door opened all night (several occasion).
>
> Never restock the front desk or vacuum or mop. (left the chips and keys station completed empty)

(ECF No. 26-3, PageID.390).

After her suspension, Bing never returned to work. She was scheduled to return to work on May 19, 2022, but she asked Firas to find someone to cover for her. (ECF No. 26-11, PageID.418). Then, Bing did not respond to Firas' text on May 21, 2022, that said "Hi Latisha" or his text on May 23, 2022 that said "Hi Latisha. R u working today?" (*Id.*, PageID.418-19). According to Bing, she "did not go into work because… basically [she]

---

[3] Although the letter itself has no timestamp, Hampton Inn states and Bing does not dispute that the letter was sent after she received the email addresses and after she and Firas agreed to meet the next day. (ECF No. 26, PageID.213-16).

quit." (ECF No. 26-2, PageID.360).

As a result of these events, on February 20, 2023, Bing filed a charge of discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 26-12, PageID.421). In the Charge, Bing identified the "DATE(S) DISCRIMINATION TOOK PLACE" as May 12, 2022, at the "Earliest," and May 13, 2022, at the "Latest." (*Id.*). She identified the type of discrimination as "Race, Retaliation." (*Id.*). And she described the allegedly discriminatory events as follows:

> On or about April 1, 2022, I was asked to give a day or two (2) to a new Chaldean employee. I refused. Thereafter, my employer began subjecting me to harassment. I was accused of sleeping on the job, and the employer installed a camera and would send screenshots asking why a cabinet door was open; stating he could not see me and where was I and requesting that I sit in view of the camera, Also, I was disciplined for not doing duties that the shift prior failed to complete.
>
> On or about May 12, 2022, I complained in an email to my supervisor and the General Manager that the General Manager was subjecting me to race discrimination in order to hire individuals from the Chaldean community and/or to give my hours to a new hire of the Chaldean community. On or about May 13, 2022, the General Manager suspended me for five (5) days for alleged performance issues which I deny. Thereafter, my 40-hour work week was reduced to three (3) days.
>
> I believe I have been subjected to discrimination due to my race (black) and subject to discipline, suspension, and reduced hours in retaliation for opposing the harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 26-12, PageID.422).

Bing then filed the present action on October 17, 2024. (ECF No. 1). Hampton Inn filed a motion for summary judgment on November 17, 2025. (ECF No. 26). Hampton Inn argues that it is entitled to summary judgment because Bing failed to exhaust several

claims, she fails to state a claim under the Older Michiganians Act, and her "claims of race discrimination and retaliation are unsupported by sufficient evidence to create a triable issue of fact." (*Id.*). On January 15, 2026, Bing filed a "Statement of Material Counterfacts not in Dispute [and] Counter-Statement of Disputed Facts" in response. (ECF No. 29). In this filing, Bing included a counterstatement of material facts, but no other discussion of Hampton Inn's arguments, and with over 400 pages of exhibits. (*Id.*). Also in this document were several blank pages before and after Bing's statement of facts, suggesting she had accidentally omitted some content. (*Id.*, PageID.428, 436-441). Hampton Inn replied, pointing out that Bing failed to "address *any* of the arguments set forth in [its] motion." (ECF No. 30, PageID.921) (emphasis in original).

The Court then held a status conference with Bing and counsel for Hampton Inn on May 6, 2026, in which Bing's missing pages were discussed. The Court thereafter ordered Bing to file a new response. (ECF No. 33). In the Order, the Court specifically instructed Bing not to

> attach voluminous unexplained exhibits to her response brief in hopes that the Court will sift through them in an attempt to divine how they support her arguments…. Rather, Plaintiff's response brief should explain how any exhibit attached thereto supports her legal arguments. **Plaintiff is advised that her failure to comply with this Order may result in a recommendation that Defendant's summary judgment motion be granted.**

(*Id.*, PageID.931) (emphasis in original).

On June 8, 2026, Bing filed the revised response, which includes six pages of briefing, six pages summarizing each exhibit in a few sentences, and nearly 300 pages of

exhibits. (ECF No. 35).[4]

**B. Standard of Review**

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the

[4] Bing also filed a response (ECF No. 34) prior to filing her "Revised Response" on the same day, June 8, 2026. However, this initial response contains only three pages of wholly conclusory assertions that add nothing to her "Revised Response." (ECF No. 35).

opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C. Analysis**

As an initial matter, Bing failed to follow the Court's direction to file a response to Hampton Inn's motion for summary judgment that does not contain "voluminous unexplained exhibits" and that contains explanations as to "how any exhibit attached thereto supports her legal arguments." (ECF No. 33, PageID.931). In her "Revised Response" to Hampton Inn's Motion, Bing includes a short brief in opposition as well as numerous statements identifying each of her exhibits. (ECF No. 35, PageID.942-47). But these statements are all conclusory in nature and do not sustain Bing's obligation to explain how the exhibits support her claims, let alone meaningfully refute Hampton Inn's legal arguments. For example, where she discusses her exhibits, Bing writes that "Exhibit Q contains communications regarding EEOC settlement proceedings and further documents Plaintiff's participation in the administrative process" and "Exhibit J contains communications among managers and staff concerning workplace operations. The exhibit helps identify decision-makers, demonstrates management involvement, and provides context regarding employment decisions affecting Plaintiff." (*Id.*, PageID.945-46). These kinds of statements are not responsive to Hampton Inn's legal arguments and do not explain how the exhibits support her claims or raise any material issue of fact.

Regardless, even doing its best to construe Bing's filing as responsive to Hampton

Inn's arguments, the Court still finds that she fails to raise a question of material fact as to any of her claims, and that Hampton Inn's motion for summary judgment should be granted.

**1. Abandoned Claims**

The Court agrees with Hampton Inn that Bing has abandoned some of her claims. Specifically, Bing did not respond to Hampton Inn's arguments in its motion for summary judgment that (1) she did not exhaust several claims because she did not raise them in the EEOC charge, or (2) that her state law claim has no "legal or factual basis." (ECF No. 26, PageID.204-08). Because Bing failed to address Hampton Inn's arguments related to those claims, they should be deemed "abandoned" and Hampton Inn's motion for summary judgment as to those claims should be granted.

The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases).

The first argument that Bing concedes in her revised response is that she "failed to exhaust administrative remedies concerning her claims of discrimination based on color, gender, religion, national origin, disability, disparate treatment, harassment, and hostile work environment." (ECF No. 26, PageID.204). Hampton Inn cites *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) to explain that "an employee alleging employment discrimination in violation of [Title VII] must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts." "As a

general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Id.* (citing 42 U.S.C. § 2000e–5(f)(1); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47 (1974)). As explained recently in *White v. FCA US LLC*, No. 24-10160, 2026 WL 736758, at *4 (E.D. Mich. Mar. 16, 2026):

> Title VII requires (1) the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission, (2) the receipt of a right-to-sue notice, and (3) the timely filing of a lawsuit (4) that raises claims that are reasonably related to the claims raised in the administrative charge. *Bell v. Dollar Tree, Inc.*, No. 24-13259, 2025 WL 3252656, at *5 (E.D. Mich. Nov. 21, 2025). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis []*, 610 F.3d 359, 361 (6th Cir. 2010). This is because the charged party would not have notice and the EEOC could not fulfill its "investigatory and conciliatory role." *Id.* But "[w]hen the EEOC investigation of one charge in fact reveals evidence of a different type of discrimination against the plaintiff," or "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim," the lawsuit with the new claim may proceed. *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). In other words, a plaintiff's Title VII claims are "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Szeinbach v. Ohio State Univ.*, 987 F. Supp. 2d 732, 747 (S.D. Ohio 2013) (citing *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir.1980)); *see also Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (explaining that the exhaustion requirement "is not meant to be overly rigid" such that "the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination'") (citation omitted).

*White*, 2026 WL 736758, at *4.

In the present case, Bing wrote in her EEOC charge that she was only bringing claims based on "Race" and "Retaliation." (ECF No. 26-12, PageID.421). Because she did not raise the other claims she now alleges in her complaint, Hampton Inn argues that

those other claims are not exhausted and should therefore be dismissed.

In her response brief, Bing entirely fails to address this argument. Regarding exhaustion, she writes only that she "filed an EEOC Charge of Discrimination and pursued administrative remedies." (ECF No. 35, PageID.846). But it is not in dispute that Bing filed an EEOC Charge of Discrimination. Rather, Hampton Inn argues that only her claims for racial discrimination and retaliation are exhausted by that Charge. Since Bing failed to address this argument in her response brief, she has abandoned the issue. *Brown*, 545 F. App'x at 372. Thus, Hampton Inn's motion for summary judgment should be granted as to Bing's claims of "discrimination based on color, gender, religion, national origin, disability, disparate treatment, harassment, and hostile work environment." (ECF No. 26, PageID.204).[5]

Second, Bing did not respond to Hampton Inn's argument that her state law claim pursuant to the Older Michiganian's Act ("OMA") should be dismissed because "there is no factual basis for allowing that claim to proceed." (ECF No. 26, PageID.207). As Hampton Inn explains,

> OMA contains an anti-retaliation provision, which [Bing] cited in her Complaint. []. That part of the law provides that "[a] person who retaliates or discriminates against [certain individuals] due to that individual's registration of a complaint or assistance in the

[5] The Court recognizes that, liberally construing Bing's EEOC charge, her hostile work environment claim based on her allegations of racial discrimination was arguably "reasonably expected to grow out of the charge of discrimination." *Randolph*, 453 F.3d at 732. Even if that is the case, though, that hostile work environment claim should be dismissed for the same reasons as her underlying race discrimination claim. *See infra* at 12-16. That is, Bing failed to raise a material question of fact that the alleged harassment was based on race. *Williams v. CSX Transp. Co*., 643 F.3d 502, 511 (6th Cir. 2011). ("To succeed on a claim of a racially hostile work environment, a plaintiff must demonstrate that… the harassment was based on race.").

> investigation of a complaint is guilty of a misdemeanor[.]" MCL 400.586j(1). The individuals protected by the statute are: (1) "an officer, employee, resident, or visitor to a long-term care facility"; (2) "a family member or guardian of a resident in a long-term care facility"; (3) "an ombudsman described by [the OMA]"; and (4) "a volunteer at a long-term care facility."

(*Id.*, PageID.207-08) (citing MCL 400.586j(1)(a)-(d)) (internal citations omitted).

Hampton Inn argues that it is entitled to summary judgment on Bing's claim under the OMA because she "is not among the classes of individuals protected by the OMA's antiretaliation provisions, and even if she were, she has not alleged—and there is no evidence to suggest—that she registered a complaint or assisted in the investigation of a complaint falling within the purview of the OMA." (*Id.*, PageID.208). Bing does not address this argument or even raise her OMA claim in her response brief. Thus, Bing abandoned her claim under the OMA, and Hampton Inn's motion for summary judgment should be granted as to this claim.

**2. Race Discrimination**

Because Bing has no direct evidence of discrimination, she must establish the following elements to make out a *prima facie* case of race discrimination: 1) she is a member of a protected group; 2) she was subjected to an adverse employment decision; 3) she was qualified for the position; and 4) similarly situated non-protected employees were treated more favorably. *Smith v. City of Toledo*, Ohio, 13 F.4th 508, 515 (6th Cir. 2021); *Blick v. Ann Arbor Public Sch. Dist.*, 516 F.Supp.3d 711,722 (E.D. Mich. 2021). The Court will first discuss Hampton Inn's arguments as to this claim, and then Bing's responsive arguments, if any.

First, Hampton Inn argues that Bing was not subject to an adverse action and that even if she was, she does not provide any evidence that action taken against her was based on race. Specifically, Hampton Inn argues that "merely asking whether [Bing] was interested in giving shifts to a co-worker did not constitute an adverse employment action" and that even if it was an adverse action, "there is no evidence that Hampton's question to [Bing] about whether she was interested in giving up any of her shifts was tied to any person's race…" (ECF No. 26, PageID.210-11). In support, Hampton Inn provides the following excerpt from Bing's deposition:

> Q: Do you think that Firas asked you to give a day or two of your schedule to Jason because Jason is Chaldean?
>
> **A: I just know that he wanted to give two of the days to Jason. I was full-time, working five days. He asked me to give two of my days to him.**
>
> Q: Are you aware of any evidence that Firas was making that request because of your race or because of Jason's race?
>
> **A: No. I don't have any evidence, just the request via text message. Just the message between him and I.**

(*Id.*, PageID.211) (citing ECF No. 26-2, PageID.304) (emphasis in original).

Next, Hampton Inn argues that Bing provides no evidence that "she was asked to help with tasks that non-Black employees were not asked to assist with." (*Id.*, PageID.211). In support, Hampton Inn cites the following portion of her deposition:

> Q: Do you have any evidence that you were asked to fold laundry because of your race?
>
> **A: No. I don't have anything to say that it was because of my race.**

(*Id.*) (citing ECF No. 26-2, PageID.346).

The Court concurs with Hampton Inn that these types of requests to Bing do not constitute adverse actions, *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (an adverse employment action is defined as a "materially adverse change in the terms or conditions" of employment), and that even if they did, she failed to raise a material question of fact as to her *prima facie* case because she failed to present any evidence that similarly situated employees were treated differently than her with respect to these matters.

Finally, Hampton Inn turns to Bing's claim that her "five-day suspension constituted an adverse employment action for purposes of her discrimination claim," arguing that, while such a suspension can clearly constitute an "adverse action," "the claim nevertheless fails at the initial phase of the analysis because [Bing] has produced no evidence concerning the race(s) of the employee(s) who replaced her while she was suspended." (*Id.*, PageID.211-12). The Court agrees that Bing failed to raise a material issue of fact on this issue.

In response to the above arguments, Bing only writes:

> Defendant asserts that Plaintiff was disciplined for legitimate performance-related reasons.
>
> Plaintiff disputes those allegations.
>
> The communications and records submitted by both parties demonstrate ongoing disagreements concerning laundry duties, towel folding, housekeeping-related work, and workplace responsibilities.
>
> Plaintiff denies that she was sleeping on the job and disputes Defendant's characterization of events.
>
> Plaintiff further contends that Defendant exaggerated or selectively enforced workplace expectations after Plaintiff complained of discrimination.

(ECF No. 35, PageID.939).

Bing fails to raise a material question of fact as to whether she was discriminated against based on race. To raise a material question of fact, Bing must do more than state she "disputes" Hampton Inn's allegations. Rather, she must put forth evidence to support her allegations. *Alexander*, 576 F.3d at 558 (The opposing party "must make an affirmative showing with proper evidence in order to defeat the motion."). While Bing writes that there were "disagreements concerning laundry duties, towel folding, housekeeping-related work, and workplace responsibilities," she fails to answer Hampton Inn's salient argument that she was not treated differently than any other similarly situated employees. (ECF No. 35, PageID.939). She states in her complaint that two employees who worked the daytime shift "who are white weren't written up for not stocking and/or suspended for 4 days" (ECF No. 1, PageID.13), but Bing doesn't respond to Hampton Inn's argument that they were not similarly situated to herself because they worked the daytime shift which carried somewhat different responsibilities. (ECF No. 26, PageID.212; ECF No. 26-2, PageID.297). Nor does Bing provide evidence that those employees were similarly situated to her regarding pay or title or job description, or that they had other behavioral issues like her, such as not folding laundry, walking barefoot around the front desk, or leaving the closet door open. And she does not provide evidence or even allege that employees of a different race replaced her while she was suspended.

Since Bing fails to present evidence that similarly situated employees were treated differently than she was, Hampton Inn's motion for summary judgment should be granted

as to Bing's race discrimination claim.[6]

**3. Retaliation**

Hampton Inn essentially makes three arguments as to why it is entitled to summary judgment on Bing's retaliation claim. (ECF No. 26, PageID.213-15). While any one of these arguments is dispositive to Bing's retaliation claim, she does not substantively respond to any of them. (ECF No. 35). In brief, Hampton Inn argues that Bing did not engage in protected conduct, there was no causation because Firas was going to discipline Bing before he received the letter, and that it "had legitimate, non-retaliatory reasons for suspending her." (ECF No. 26, PageID.213-15).

As to Hampton Inn's argument that Bing's protected conduct was not the cause of her suspension and that instead Hampton Inn had legitimate non-discriminatory reasons

---

[6] As discussed in more detail below with respect to Bing's retaliation claim, even if she established a *prima facie* case of race discrimination, she fails to raise a material question of fact as to whether Hampton Inn's proffered reasons for its actions were pretextual. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) ("If [plaintiff] can establish her prima facie case, the burden shifts to [defendant] to provide a 'legitimate, nondiscriminatory reason' for its action. [] Should [defendant] do so, the burden of production shifts back to [plaintiff] to demonstrate that [defendant]'s proffered reason was a mere pretext for discrimination. [].") (internal citations omitted).

Hampton Inn explains that Bing "was slated to be disciplined for her misconduct and refusal to pitch in while the Hotel was short staffed." (ECF No. 26, PageID.213). Hampton Inn provides evidence of Bing walking in the office barefoot along with a message from Firas saying "walking to the front desk barefoot is not professional." (ECF No. 26-9, PageID.407). Hampton Inn also includes photos from Firas to Bing showing empty bins and "plenty of water and chips" that she was supposed to use to stock them. (*Id.*, PageID.407). Finally, Hampton Inn alleges that Bing "was warned at least once about not blocking the camera by swinging the cabinet door and leaving it opened. [She] continued to ignore following my directions." (ECF No. 26-3, PageID.390). Bing does not argue that these explanations were pretextual. Nor does she present any evidence that would raise a material question of fact as to that issue. Thus, even if Bing satisfied her *prima facie* claim, Hampton Inn's motion for summary judgment should be granted as to Bing's race discrimination claim.

for that discipline, Hampton Inn asserts that "Firas informed [Bing] she was slated to be disciplined for her misconduct and refusal to pitch in while the Hotel was short staffed" before she sent the letter complaining about his conduct. (ECF No. 26, PageID.213). That assertion is amply supported by record evidence. Indeed, Hampton Inn points to the following texts that Firas sent to Bing on May 12, 2022: 1) photos of crates and water, along with the message, "[w]e have plenty of water and chips. U didn't even bother to get them ready;" 2) a photo of her walking in the office barefoot with the message, "walking to the front desk barefoot is not professional;" and 3) a message saying "[w]e need to talk." (*Id.*, PageID.404, 406-07). Hampton Inn also points out that Bing only asked for "the Hilton emails for Faris [sic] and Samon"[7] and sent the complaint letter to management after Bing received the texts, and after Firas and Bing had already agreed to meet. (ECF No. 26, PageID.213-16; ECF No. 26-10, PageID.413).

In response, Bing writes:

> To establish retaliation, Plaintiff must show protected activity, employer knowledge, and adverse action.
>
> The evidence supports all three elements.
>
> Plaintiff complained of discrimination and harassment.
>
> Defendant knew of those complaints.
>
> Defendant admits that Plaintiff was suspended.
>
> Exhibits M and V demonstrate scheduling changes and reduced work opportunities following Plaintiff's complaints.
>
> A reasonable jury could conclude that the suspension and subsequent

[7] In an earlier filing, Bing identifies "Samon Mansor" as the "front Desk Manager." (ECF No. 29, PageID.429).

> reduction in work opportunities were causally related to Plaintiff's protected activity.

(ECF No. 35, PageID.938).

But Bing fails to refute Hampton Inn's clear evidence that, prior to her protected conduct, she knew Firas was going to discipline her. Indeed, the evidence Bing cites only shows that she was disciplined, not that she was disciplined out of retaliation. First, Exhibit M is a work schedule for the weeks May 30 and June 6, 2022, showing Bing scheduled from 11:00pm to 7:00 am on Monday through Wednesday of both weeks. (ECF No. 35, PageID.991). Exhibit N similarly shows a work schedule for the whole month of May 2022 showing Bing suspended on May 16 through May 18 and otherwise working approximately three days a week. (ECF No. 35, PageID.1230-31). But Hampton Inn doesn't dispute that Bing was suspended. Nor does the fact that she was suspended show that the suspension was retaliatory. Again, the clear evidence presented by Hampton Inn shows that was not the case, and that Bing was suspended because of her own prior unprofessional conduct. Second, Exhibit V is not in Bing's revised response. (ECF No. 35). And, even if it exists elsewhere in the record, the Court will not scour the docket searching for it, particularly when Bing was specifically instructed to provide her exhibits with her revised response, and to cite to the relevant pages. (ECF No. 33, PageID.931) Finally, the mere fact that Bing's work schedule changed would not, without more, show that she was suspended because of retaliation.

In sum, because Bing fails to raise a question of material fact as to whether Firas disciplined her because of protected conduct, Hampton Inn's motion for summary

judgment as to her retaliation claim should be granted.

**III. CONCLUSION**

For the foregoing reasons, **IT IS RECOMMENDED** that Hampton Inn's motion for summary judgment **(ECF No. 26)** be **GRANTED** and this case be **DISMISSED**.

Dated: August 27, 2026
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should

be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 27, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager